STATE of Tennessee, Appellee,

v.

Greg MORGAN, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 28, 1991.

Permission To Appeal Denied
By Supreme Court
Jan. 27, 1992.

Charles M. Corn, Public Defender, Cleveland, for appellant.

Charles W. Burson, Atty. Gen. and Jeannie Kaess, Asst. Atty. Gen., Nashville, Jerry N. Estes, Dist. Atty. Gen., Athens, A. Wayne Carter and Rebble Johnson, Asst. Dist. Attys. Gen., Cleveland, for appellee.

## OPINION

TIPTON, Judge.

The defendant, Greg Morgan, appeals from his conviction by a jury in the Bradley County Criminal Court for felony murder for which he was sentenced to life imprisonment. In addition to contesting the sufficiency of the evidence, he claims error occurred as follows:

(1) The trial court failed to suppress the defendant's confession which was psychologically coerced.

(2) The trial court refused to continue the trial when a material witness for the defense was unavailable.

(3) The trial court refused to remove prospective jurors for cause because they

read a newspaper article regarding the case.

(4) The trial court allowed a witness to make an in-court identification of the defendant without determining whether or not it was tainted by an unconstitutionally conducted lineup.

We affirm the conviction.[1]

Clifton Swift, who was originally charged with the murder, testified that he met the defendant in Florida. He said that the defendant obtained a .25 caliber gun from one of Swift's friends. The two men began a trip north in August, 1989, in Swift's car, but it began to malfunction. Swift said that they stopped at a hotel to steal another car, but were unsuccessful. The two discussed stopping at an interstate rest area in order to steal a car and they stopped at one in Bradley County about 10:30 at night.

Swift testified that the defendant said he was "going to roll a faggot." Swift stayed in his car and tried to get some sleep. Another car pulled up and the driver, who was the murder victim, began talking to the defendant. Swift said that the defendant and the victim left the rest area in the victim's car and returned with food. He said that they left a second time, but only the defendant returned in the victim's car. The defendant told Swift to put his belongings in the victim's car. Swift took his own car's license plate with him.

As they drove north, the defendant told Swift that he had killed the victim. He said the victim began making advances and had stopped the car. He said he shot the victim in the head five times and pulled him out of the car. Swift stated that he turned on the interior light and saw a lot of blood. They cleaned the car interior and Swift put his license plate on the victim's car. The defendant had money which he said he took from the victim.

The defendant wanted to go to Alexandria, Indiana, his hometown. Swift testified that they stopped near Indianapolis to eat, but the defendant left the restaurant. Swift did not see the defendant, again, until the trial. Swift went to Kansas City, Missouri, and voluntarily entered a hospital. He acknowledged that, at the time of the trial, he was charged with being an accessory after the fact to the killing.

Richard Akins testified that he knew the victim. He said that, on the night in question, he went to the rest area, which was a gathering place, and observed the activity there for several hours. He identified the defendant as a man he saw talking to the victim. He saw another car, which the proof showed matched the description of Swift's car, and saw a person in the driver's seat leaning against a pillow. Akins said he saw the defendant and the victim leave in the victim's car. He said he later saw the defendant return in the car and the defendant and Swift transfer their belongings to it.

The state proved through the Florida sellers that the defendant bought a .25 caliber handgun. Also, it proved that .25 caliber shell casings were found near the victim's body. The cause of death related to gunshot wounds to the head.

Detective Anthony Benefield testified as to his investigation which led him to Indiana and an interview with the defendant. He said that, at first, the defendant told him that he was asleep in the car and that Swift had got in the other car. The defendant said that Swift admitted killing the victim. Later, the defendant changed his story and Detective Benefield tape-recorded the last version, which was played to the jury. In it, the defendant admitted shooting the victim. He said the victim had sexually assaulted him in the car and that they struggled when the defendant pulled a gun. He said he guessed he pulled the trigger accidentally and it just kept going off. He said Swift decided to take the victim's car.

Jack Woods, a police officer from Alexandria, Indiana, played a tape-recorded in-

---

1. The brief, including the argument, is essentially barren of meaningful citations to the record relative to the issues raised in this appeal. When adequate references to the record are not included, the appellant runs the risk of having his issues deemed waived. *See* T.R.A.P. 27(a)(6)(7); Tenn.Crim.App.R. 10(b).

terview which he conducted with the defendant before Detective Benefield arrived. In it, the defendant had initially denied riding from Florida with Swift or knowing about the killing. He claimed he had hitched a ride from Florida on a truck. Later, the defendant admitted riding with Swift, but claimed that Swift killed the victim and took his car.

■ The defendant asserts that the evidence was insufficient because his confession supports self-defense or manslaughter.[2] Even if his characterization of the confession were correct, it would not change the result. On appeal, in determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard presumes that the jury has resolved the conflicts in the testimony, determined the credibility of the witnesses, and made all legitimate and reasonable inferences from the evidence in favor of the state. *See State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). We do not reweigh the evidence, but only determine its sufficiency as a matter of law under this standard. In this regard, there was ample evidence from which the jury could find beyond a reasonable doubt that the defendant intentionally killed the victim for the purpose of stealing his car and his money.

■ Next, the defendant claims that he was coerced into confessing by the police playing upon his fear of the death penalty. At the suppression hearing, the state proved that the Indiana Police and Sgt. Benefield, on separate occasions, advised the defendant of his *Miranda* rights before he confessed. It proved that he, orally and in writing, waived these rights. Sgt. Benefield testified that the defendant expressed concern several times about the death pen-

alty. Sgt. Benefield said that it was the defendant who brought the subject up and that, each time, he was told that the decision was up to the attorney general and that they, the police, could only assure him that whatever he said would be submitted to the attorney general. Sgt. Benefield denied offering any deals to the defendant.

The defendant testified at the hearing and said that he had requested a lawyer, but had not received one. Also, he said the police told him he was looking at the death penalty if he did not talk, but if he gave a confession, they would talk to the prosecutor about him getting manslaughter. The trial court accredited Sgt. Benefield's testimony and specifically found the defendant's testimony to be unworthy of belief. It held that the confession was voluntarily and intelligently entered without coercion.

■ On appeal, the findings of fact by the trial court at such a hearing are presumed correct unless the record preponderates against them. *State v. O'Guinn*, 709 S.W.2d 561 (Tenn.1986). Further, the trial court's resolution of disputed evidence and conflicts in testimony, requiring a determination of the credibility of witnesses, is binding on this court unless there is real evidence to the contrary. *State v. Groves*, 735 S.W.2d 843 (Tenn.Crim.App.1987). In this case, the record supports the trial court's findings of fact and the legal conclusions drawn therefrom. This issue is without merit.

■ The next issue relates to the trial court refusing to grant a continuance of the trial. The defense sought several continuances because of the unavailability of a witness, Stanley Garrett. It filed a transcript of an interview at the Bradley County jail with Garrett. Essentially, Garrett stated that he had been in jail with Clifton Swift. Swift told him that Swift had been involved in murders in other states, but that he had been proven insane. Garrett

---

**2.** The defendant, also, claims that the evidence was insufficient because it was based upon his illegally obtained confession and the tainted in-court identification. If the assailed evidence were inadmissible, our review would relate to the degree of prejudice to the defendant, not sufficiency. In fact, the defendant's contention otherwise assumes the evidence is sufficient and, therefore, raises no cognizable issue which calls for such a review.

said that Swift said that he and another person had committed a murder, but Garrett, also, stated that Swift said that he did not know who committed it because they were all "drugged up."

The defendant's trial was originally set for February 6, 1990, and Garrett had been subpoenaed for it. The record is unclear as to when he was served for this trial. Apparently, the trial was continued because certain lab reports were not ready. The case was reset for March 7, 1990, but Garrett was unable to be located for service of the reissued subpoena. At the February 28th hearing regarding a continuance from the March trial setting, defense counsel acknowledged that everybody was out "beating the bushes." At a March 2nd appearance, defense counsel said that they "had him available upon the 6th of February." However, at the February 28th hearing, the prosecution and the court clerk had stated, without dispute by the defense, that the witness had failed to show at his own trial on December 15, 1989, and that a capias remained outstanding for his arrest. At one point, defense counsel stated that he did not think they would be able to find the witness and offered to stipulate his testimony. The state did not agree. The defense suggested a thirty day continuance, which the trial court granted. The trial was reset for April 5, 1990, and the trial court advised counsel that it would not grant another continuance.

In late March, the defendant sought another continuance, but it was denied. In its written order, the trial court noted that the defendant "has presented no evidence that witness Stanley Garrett is alive, or if alive, might ever be located." At the trial, the defendant examined Swift about some of the statements that Garrett attributed to him, but Swift denied making them.

■ The granting of a continuance rests within the sound discretion of the trial court. *Moorehead v. State*, 219 Tenn. 271, 409 S.W.2d 357, 358 (1966). A reversal may only occur if the denial was an abuse of discretion and the defendant was improperly prejudiced in that a different result might reasonably have been reached if

the continuance had been granted. *See State v. Dykes*, 803 S.W.2d 250, 257 (Tenn. Crim.App.1990); *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn.Crim.App.1973).

In considering whether or not a continuance is appropriate, we must be mindful that the defendant has a fundamental constitutional right to compulsory process for the obtaining of witnesses and when the witness is shown to be material, the trial court has no discretion as to the issuance of such process. *See Bacon v. State*, 215 Tenn. 268, 385 S.W.2d 107 (1964); Tenn. Const. art. I, § 9; U.S. Const. amend. VI. Further, in the legitimate exercise of this right to obtain witnesses, as a sister state has noted, "a reasonable opportunity must be afforded to make the process effective and, if necessary for this purpose, a reasonable adjournment of the trial should be granted." *State v. Rossi*, 71 R.I. 284, 43 A.2d 323, 326 (1945). In fact, "insistence upon expeditiousness in the face of a justifiable request for delay" can render a trial an empty formality so as to violate due process. *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

■ A trial court should not summarily adhere to time schedules or prejudge the issue of a continuance. It should properly balance the potential harm to the state caused by a delay against the potential harm to the defendant caused by no delay, within the context of its duty to administer the criminal justice system within its circuit, including the control of its docket. In this vein, it should be noted that the defendant stipulated the testimony of various out-of-state witnesses for the state, which greatly reduced the inconvenience the state might have otherwise experienced by another continuance. Mr. Swift was being held in jail. Although the state expressed concern about the delay being to no avail, it did not register any objection to a continuance. Further, the record does not reflect that any substantive inconvenience to the court would occur by a continuance.

■ However, even though the state acknowledged in the trial court that the witness' expected testimony was of potential importance to the defense, the burden rest-

ed with the defendant to show that another continuance might have reasonably resulted in the witness appearing for trial. *See, e.g, Brown v. State*, 489 S.W.2d 855, 857 (Tenn.Crim.App.1972). The record does not contain any indication that discovery of the witness was probable nor was there any complaint that the best efforts were not being made by those who might be charged with a duty to serve process. We are not told of potential leads, prior addresses, location of family or any other circumstance which might indicate that the witness could or should be found at any time, much less within a reasonable time. In fact, as previously noted, the record reflects that defense counsel did not believe the witness would be found. Absent indication in the record of any potential for Mr. Garrett to be found, we cannot hold that the trial court abused its discretion in denying the continuance.

Next, the defendant complains about the trial court's failure to strike for cause all jurors who had read a local newspaper article published the day before trial. In it, the Bradley County Sheriff called the defendant the "trigger man" and said that further evidence pointed to the defendant, not Swift, being the one who left the rest area with the victim. The article incorrectly reversed the defendant and Swift by saying that Swift turned himself into authorities in Indiana (which the defendant did) and that the defendant was arrested at a hospital (which happened to Swift). The article, also, included the material points of the defendant's confession.

■ Various jurors admitted reading the article, but each one, who was asked, indicated that he or she could set it aside and give the defendant a fair trial based upon the evidence. The defendant claims that the degree of exposure was so high and near in time to the trial that it was impossible to determine, through perfunctory questions, the true prejudice. *See* Tenn. R.Crim.P. 24(b)(2). In this regard, although the mere exposure of jurors to newspaper publicity is not constitutional error, *see Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), the

publicity may be such that the court may presume that the jury panel is tainted, regardless of their professed ability to set aside what they have seen. *See Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

■ Unfortunately, what is impossible to determine from this record is the specification of all the jurors who read the article and which ones, if any, were left on the petit jury. The defendant makes no citation to the record, other than a general reference to the one hundred eighteen pages relating to the voir dire process. Nothing indicates if all the peremptory challenges were used or if the defendant sought to remove any juror after his peremptory challenges were exhausted. Given this record, we would only note that, generally, a juror is not disqualified for exposure to media if he or she states on oath that any impression or opinion can be put aside and that a verdict will be based on the evidence presented. *Lackey v. State*, 578 S.W.2d 101 (Tenn.Crim.App. 1978). This issue is without merit.

■ Finally, the defendant contends that the trial court erred by allowing Mr. Akins to identify the defendant in-court without making a jury-out determination that such testimony was untainted by a previous lineup identification, which had been suppressed. After a pretrial hearing, the trial court had suppressed Akins' lineup identification because it occurred without the defendant's right to counsel, under the Sixth Amendment to the Constitution of the United States and art. I, § 9 of the Constitution of Tennessee, being honored.

In *State v. Mitchell*, 593 S.W.2d 280 (Tenn.), *cert. denied*, 449 U.S. 845, 101 S.Ct. 128, 66 L.Ed.2d 53 (1980), our Supreme Court held that in-court identification by a witness who made a previous identification at a lineup, held in violation of the defendant's right to counsel, "may only be received after the Trial Judge shall have conducted a jury-out evidentiary hearing designed to ensure that the witness' in-court recollection is not tainted by the illegal lineup...." *Id.* at 287. The purpose of the hearing is to determine whether or

not the in-court evidence is based upon sufficiently independent circumstances to show that it is not a fruit of the original illegality. *See, e.g., Sloan v. State,* 584 S.W.2d 461 (Tenn.Crim.App.1978).

In the present case, the trial court made no specific holding that the in-court identification was not improperly tainted by the lineup nor did it place in the record any findings in this regard. However, this procedural omission does not negate the fact that sufficient evidence was introduced at the pretrial suppression hearing to support such a holding, if one had been made. Akins had opportunity to observe the defendant and the victim, whom he knew, for substantial periods of time at fairly close range at the rest area. There was no discrepancy between his pre-lineup description of the defendant and the defendant's actual description. He had made no previous misidentifications nor had he seen any photographs before the lineup was held. The lineup occurred within ten days of the murder and it consisted of five men of markedly similar appearance. Akins testified that he was never told whether or not he identified the person who was charged.

Therefore, there was sufficient evidence to conclude that Akins' in-court identification was sufficiently independent from and not improperly tainted by the lineup. The trial court's failure to make such a determination, and specify his reasons therefor, before Akins testified at trial did not prejudice the defendant.

In consideration of the record, as a whole, the judgment is affirmed.

JONES and PEAY, JJ., concur.