IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JUNE 1997 SESSION

FILED

January 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| GREGORY MORGAN, | ) | |
| | ) | |
| Appellant, | ) | No. 03C01-9611-CR-00404 |
| | ) | |
| | ) | Bradley County |
| v. | ) | |
| | ) | Honorable Mayo L. Mashburn, Judge |
| | ) | |
| STATE OF TENNESSEE, | ) | (Post-Conviction) |
| | ) | |
| Appellee. | ) | |

For the Appellant:

Ashley L. Ownby
180 N. Ocoee Street
P.O. Box 176
Cleveland, TN 37364-0176

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
        and
Marvin E. Clements, Jr.
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

Jerry N. Estes
District Attorney General
203 E. Madison Avenue
Athens, TN 37303-0647

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

## O P I N I O N

The petitioner, Gregory Morgan, appeals as of right from the Bradley County Criminal Court's order denying him post-conviction relief from his 1990 first degree felony murder conviction and resulting life sentence. The judgment of conviction was affirmed on appeal. State v. Morgan, 825 S.W.2d 113 (Tenn. Crim. App. 1991). The petitioner presents the following issues for our review:

> I. Whether the petitioner's due process rights were violated in that:
>
>> (A) The trial court failed to give a jury instruction regarding the effect of the petitioner's voluntary intoxication;
>>
>> (B) The trial court improperly instructed the jury that it should stop deliberations once it found the petitioner guilty of felony murder, thus restricting consideration of self-defense or provocation evidence;
>>
>> (C) The trial court improperly instructed the jury so as to direct a finding on an essential element of first degree murder; and
>>
>> (D) The trial court improperly instructed the jury on reasonable doubt by its use of the phrases "moral certainty" and "let the mind rest."
>
> II. Whether the petitioner received the ineffective assistance of counsel in that:
>
>> (A) His trial attorneys refused to allow him to testify;
>>
>> (B) His trial attorneys failed to secure the testimony of a material defense witness;
>>
>> (C) His trial attorneys failed to make a proper record for review of the claim that jurors should have been stricken for cause; and
>>
>> (D) His trial attorneys failed to challenge certain jury instructions.

We conclude that the post-conviction court did not err and properly denied the petitioner relief.

2

## CONVICTING TRIAL

The petitioner was originally charged with felony murder, premeditated and deliberate murder, armed robbery and grand larceny. The case dealt with events that occurred at an Interstate 75 rest area. The details of the evidence are provided in this court's opinion on the direct appeal. See Morgan, 825 S.W.2d at 115-16. Essentially, the state's proof showed that the petitioner and Clifton Swift, traveling from Florida, stopped at the rest area, ostensibly to steal a car. The petitioner met the victim, and the two left the rest area twice in the victim's car. Only the petitioner returned the second time. Swift testified for the state and said that the petitioner told him that he was going to "roll a faggot." Swift stated that the petitioner admitted to shooting the victim five times in the head and taking his money. Swift said that he had been asleep at the rest area. The two men drove the victim's car to Indiana, where they separated.

The petitioner was arrested in Indiana and gave several statements. First, he denied riding from Florida with Swift and denied knowing anything about the killing. In his second statement, he said that he had been asleep and that Swift admitted to killing the victim. In his final statement, the petitioner admitted to killing the victim. He said that the victim tried to get him drunk and sexually assaulted him in the car. He said that they struggled, and he pulled out a gun. The petitioner said that he pulled the trigger accidentally, and it kept discharging. He said that Swift then decided to take the victim's car.

## POST-CONVICTION HEARING

3

At the evidentiary hearing, the petitioner testified that he wanted to testify at trial, but his attorneys told him that he would incriminate himself and "mess everything up." He said that he followed their advice, but he believed it to be wrong. Although he admitted that he killed the victim, he claimed that his testimony about the victim getting him drunk and making homosexual advances would have helped his case. He said that he had been staggering around that night and that Swift's testimony at trial indicated that the petitioner was drunk. He said he told his attorneys that he and the victim had drunk one-half gallon of vodka. To explain the five shots, the petitioner stated that the gun was an automatic weapon.

The petitioner testified that there were three witnesses that should have been called in his defense because they would have shown that Swift was not as innocent as he claimed. He said that while he and Swift were in jail, the witnesses heard Swift say that he made a deal with the state to testify against the petitioner. He said Swift denied the existence of such a deal in his testimony at trial.

One of the petitioner's trial attorneys testified about representing the petitioner. He said that he and his co-counsel advised the petitioner not to testify because of his three different statements and their belief that the prosecutors would "destroy" him on cross-examination. He said that the petitioner was not articulate. The attorney also questioned how well the petitioner's version of the facts would stand against questioning by the state.

The petitioner's trial attorney testified that the petitioner changed his story during the case. He said that the petitioner's purported witnesses claimed to have evidence indicating that Swift was the perpetrator, however, the petitioner admitted to his attorneys that he killed the victim. The attorney acknowledged that the petitioner was the only witness to the actual killing, but he said he still did not think that the

4

petitioner should have testified. The attorney stressed that although they advised the petitioner not to testify, the petitioner could have testified if he had so desired.

The petitioner's trial attorney said that he took statements from the three witnesses that the petitioner wanted to call and obtained a continuance because he could not locate one of the witnesses. However, he said he ultimately questioned using the witnesses because their testimony was suspect because it pointed to Swift as the perpetrator.

The petitioner's trial attorney could not recall being told that one-half gallon of vodka had been consumed, nor did he recall the petitioner emphasizing his intoxication. He was aware of evidence that the petitioner had been drinking, but he stated that he did not think that intoxication was the "lynchpin" of the case. However, he said he thought that he and his co-counsel did request an instruction on voluntary intoxication.

An assistant district attorney testified that Swift did not make a deal to receive a set period of jail time. He said that Swift was convicted upon his pleas of accessory after the fact of first degree murder and Class D felony theft, and he received an effective sentence of two years.

The post-conviction court made detailed findings of fact and conclusions of law. In sum, it found no constitutional errors in the jury instructions and concluded that the petitioner received quality representation from his attorneys.

## I. INSTRUCTIONS

Preliminarily, we note that the state chose in its brief not to address the merits of the petitioner's complaints about instructions, electing instead to rely upon waiver and the fact that the post-conviction record on appeal does not include the instructions from the trial about which the petitioner complains. None of the record of the convicting case was made a part of the record on appeal. Although the state's answer to the petition in the trial court asserts waiver, the state made no such assertion at the evidentiary hearing, and the issue was never addressed at the hearing or in the trial court's memorandum order. Under such a record, we presume that the state did not pursue waiver in the trial court. Also, we may take judicial notice of the record in the direct appeal. See State ex rel. Wilkerson v. Bomar, 213 Tenn. 499, 505, 376 S.W.2d 451, 453 (Tenn. 1964). The record contains the jury instructions given by the trial court.

The petitioner had the obligation to ensure that the record in this post-conviction appeal contained all trial court events that are relevant to the issues raised. See T.R.A.P. 24. In a post-conviction case, this often means including substantial portions of the record from the original case, whether by exhibit or by consolidation of the appellate record existing in the convicting case. In any event, the state should address the merits of the issues raised on appeal even if it believes that a procedural default has occurred. Under the foregoing circumstances, we will review the petitioner's issues on appeal.

#### (A) INTOXICATION

The petitioner contends that the trial court's failure to instruct the jury on voluntary intoxication violated his due process rights because it omitted from the jury's consideration evidence material to his defense. He argues that voluntary intoxication is a defense to first degree murder because it could have prevented the petitioner from forming a premeditated and deliberate design to kill. See State v. Bullington, 532 S.W.2d 556, 560-61 (Tenn. 1976). The original record reflects Swift's testimony that he

believed that the petitioner had a lot to drink because the petitioner smelled of alcohol and was staggering. In his statement to the police, the petitioner said only that the victim tried to get him drunk. The statement also notes that there was a large bottle of vodka in the trunk of the victim's car.

The post-conviction court found that no request for an instruction was made and that none of the evidence in the case suggested that the petitioner might have been intoxicated. The court also noted that the petitioner was convicted of felony murder, not premeditated and deliberate murder.

We view due process to be implicated by the failure to instruct a jury regarding fundamental defenses fairly raised by the evidence. See, e.g., Connecticut v. Johnson, 460 U.S. 73, 103 S. Ct. 969 (1983). Also, we believe that Swift's testimony and the petitioner's statement fairly raise the issue of the petitioner's mental state. However, the fact that the petitioner was convicted of felony murder dispels the concerns raised by the petitioner. He was not convicted of premeditated and deliberate murder, which includes the mental state that is the cornerstone of the petitioner's argument. In light of this fact, we conclude that the petitioner has failed to show how his due process rights were violated by the lack of an instruction on voluntary intoxication.

## (B) SEQUENTIAL INSTRUCTION

The petitioner contends that the trial court erred by instructing the jury to consider premeditated and deliberate murder and lesser included offenses only after determining that the petitioner was not guilty of felony murder. He argues that this instruction precluded the jury from considering his claim of self-defense. This court has twice rejected this argument. In State v. Rutherford, 876 S.W.2d 118, 119-20 (Tenn. Crim. App. 1993), this court determined that a sequential jury charge did not prevent the

7

jury from fulfilling its duty to determine the degree of homicide. This court reached the same conclusion in State v. Raines, 882 S.W.2d 376, 381-82 (Tenn. Crim. App. 1994). We view these cases to be controlling.

## (C) FIRST DEGREE MURDER

The petitioner contends that the trial court's instruction on first degree murder violated his right to due process because it directed a finding of malice, an essential element of first degree murder. The trial court instructed the jury as follows:

> Malice is an essential element of this offense, and it may be either express or implied . . . . Express malice is actual malice against the party slain and exists where a person actually contemplates the injury or wrong he inflicts. Implied malice is malice not against the party slain, but malice in general, or that condition of mind which indicates a wicked, depraved, and malignant spirit and heart, regardless of social duty, and fatally bent on mischief. Implied malice may be found to exist where the wrongdoer did not intend to slay the person killed, but death resulted from a consciously unlawful act, done intentionally and with knowledge on the wrongdoer's part that the act was directly perilous to human life. In this event, there is implied such a high degree of consciousness and willful recklessness as to amount to that malignity of heart constituting malice.

A few sentences later, the trial court stated, "You're reminded that the State always has the burden of proving every element of the crime charged beyond a reasonable doubt."

The petitioner contends that in the last sentence of the instruction, the trial court essentially directed a finding of malice. He argues that when the trial court told the jury that "in this event there is . . . malice," it was saying that in this particular case there is malice. We disagree. A fair reading of the instruction shows that the trial court, in explaining implied malice, said that in the event that death results from a wrongdoer's conscious unlawful act, done intentionally and with knowledge that the act was perilous to human life, malice can be implied even if the wrongdoer did not have the intent to kill the victim. Thus, the last sentence simply relates to the previous sentence. In no way do we read the last sentence to be a finding by the trial court that there is malice in the

8

present case, nor do we believe that the jury would have so concluded, particularly in light of the fact that the trial court repeated that the state always carried the burden of proof beyond a reasonable doubt. This issue is without merit.

### (D) REASONABLE DOUBT

The petitioner contends that the trial court's instruction on reasonable doubt lowered the standard of proof for the state. He argues that the trial court's use of the phrase "let the mind rest easy" combined with "moral certainty" resulted in a burden of proof lower than "beyond a reasonable doubt." The trial court's instruction to the jury with respect to the burden of proof was as follows:

> Now reasonable doubt is that doubt engendered by an investigation of all of the proof in the case and an inability after such an investigation to let the mind rest easily as to the certainty of guilt. Reasonable doubt does not mean a captious, or a possible, or an imaginary doubt. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required, and this certainty is required as to every proposition of proof requisite to constitute the offense. The state must prove beyond a reasonable doubt all of the elements of the crimes charged . . . .

This court has previously determined that reasonable doubt instructions nearly identical to the one given in the present case were proper. See State v. Sexton, 917 S.W.2d 263, 266 (Tenn. Crim. App. 1995); Pettyjohn v. State, 885 S.W.2d 364, 365 (Tenn. Crim. App. 1994). This issue is without merit.

### II. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner claims that his counsel was ineffective for (1) refusing to allow the petitioner to testify, (2) failing to secure the testimony of a witness, (3) failing to develop a record to support the petitioner's allegation that all jurors who read a newspaper article the day before trial should have been stricken for cause, and (4) failing to object to the erroneous jury instructions. The state contends that the petitioner received the effective assistance of counsel.

9

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n. 2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. The court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

We also note that the approach to the issue of ineffective assistance of counsel does not have to start with an analysis of an attorney's conduct. If prejudice is not shown, we need not seek to determine the validity of the allegations about deficient performance. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

**(A) PETITIONER'S RIGHT TO TESTIFY**

10

The petitioner contends that his trial attorneys were ineffective because they refused to allow him to testify, thus precluding a successful claim of self-defense. At the post-conviction hearing, the following colloquy occurred between the court and the petitioner:

> COURT: They didn't. They didn't disallow you from testifying. You just got through admitting--
>
> PETITIONER: Well, right, well, that's what I mean.
>
> COURT: -- that you were the one that made the decision.
>
> PETITIONER: Because of--
>
> COURT: They didn't tell you, "You are not going to testify," did they?
>
> PETITIONER: No, they didn't, but they convinced me that it would be against my best interest to testify.

This colloquy comports with the trial attorney's testimony at the post-conviction hearing that although he and his co-counsel told the petitioner that it would not be wise for him to testify, they did not prevent him from testifying. Because there is no evidence in the record that the petitioner was prohibited from testifying, this issue is without merit.

## (B) MISSING WITNESS

The petitioner contends that his trial attorneys were ineffective because they failed to secure the testimony of a witness who would have provided testimony that contradicted that of Clifton Swift. The petitioner does not specify how he was prejudiced, nor does he provide specific information about what the missing witness would have said, other than that the witness generally gave information that could have helped the defense by contradicting Swift's trial testimony.

First, we conclude that the petitioner has failed to show how his attorneys' performance was deficient. The petitioner admitted at the post-conviction hearing that the missing witness had testified at the preliminary hearing but could not be located for trial. He said that he thought his attorneys should have tried to obtain a continuance or

11

a stipulation from the state regarding the substance of the witness' testimony.  The record reflects that the trial court did grant one continuance in order for the petitioner's attorneys to locate the witness, but the witness could not be found.  The record reflects that the petitioner's attorneys  tried to get the state to stipulate to the testimony, but the state refused.  The petitioner offers no suggestions as to what more his attorneys could have done.  Furthermore, after a review of the transcript of a conversation between the missing witness and the petitioner's attorney at the jail, we conclude that the petitioner has failed to show that he was prejudiced.


## (C) RECORD OF VOIR DIRE

The petitioner contends that his trial attorneys were ineffective for failing to preserve the record with respect to his claim that jurors were exposed to prejudicial pretrial publicity.  He argues that a newspaper article published the day before his trial, containing incorrect and misleading information, was reason to strike for cause the jurors who had read the article.  He claims that his attorneys failed to preserve the record on this issue because they failed to submit an accurate accounting of their peremptory challenges and failed to specifically request that any juror be removed from the panel.

Before his conviction will be overturned on appeal, the petitioner must show that the jurors were biased or prejudiced against him. State v. Melson, 638 S.W.2d 342, 360-61 (Tenn. 1992).  Mere exposure to news accounts of the incident does not, standing alone, establish bias or prejudice.  Prospective jurors can have knowledge of the facts surrounding the crime and still be qualified to sit on the jury. State v. Bates, 804 S.W.2d 868, 877 (Tenn. 1991).  The test is "whether the jurors who actually sat and rendered verdicts were prejudiced by the pretrial publicity." State v. Kyger, 787 S.W.2d 13, 18-19 (Tenn. Crim. App. 1989).

12

We do not believe that the petitioner has carried his burden with respect to this issue. Although this court noted on direct appeal that review of the issue was made difficult by the attorneys' failure to cite to the record and failure to indicate the use of peremptory challenges, this court nevertheless held that the issue was without merit. Certainly, the better practice would have been to include on the record the use of peremptory challenges. Nevertheless, the petitioner has not shown prejudice. At the post-conviction hearing, the trial court noted that the venire was questioned about the article and that everyone who read the article stated under oath that they could set aside the information and decide the case based upon the evidence presented at trial. Thus, the petitioner has failed to show that the jurors who were empaneled were biased or prejudiced against him.

### (D) INSTRUCTIONS

Finally, the petitioner contends that his trial attorneys were ineffective because they failed to challenge the jury instructions with respect to malice and reasonable doubt. He also argues that his attorneys were ineffective for failing to advise the jury that his codefendant was an accomplice as a matter of law.

With respect to the petitioner's contention that his trial attorneys were ineffective for failing to challenge the malice and reasonable doubt jury instructions, having concluded that the instructions were proper, we hold that the petitioner has failed to establish ineffectiveness. As for his argument about an accomplice, the petitioner indicates in his brief that he relies on the argument and authorities advanced earlier in the brief. However, nowhere in the brief is there any argument or citation to authority that would support his contention that his trial attorneys were ineffective for failing to tell the jury that, as a matter of law, Swift was an accomplice, other than citing authority that notes that an accomplice instruction must be requested.

13

In any event, we note that the trial court instructed the jury about accomplices and their significance and left it to the jury to determine if Swift was an accomplice. Swift's testimony at the trial, as well as the petitioner's final statement to the police, did not present Swift as an accomplice to the petitioner's murder of the victim. Moreover, the petitioner's statement to the police would sufficiently corroborate Swift's testimony. We do not believe that the petitioner has shown prejudice in this matter.

In consideration of the foregoing and the record as a whole, we conclude that the trial court properly denied the petition for post-conviction relief.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
John H. Peay, Judge

_____
James Curwood Witt, Jr., Judge