IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2011

**STATE OF TENNESSEE v. GEOFFREY ALEXANDER**

**Direct Appeal from the Criminal Court for Williamson County**
**Nos. II-CR061152, II-CR061153, II-CR061154     Timothy Easter, Judge**

---

**No. M2010-00887-CCA-R3-CD - Filed May 18, 2011**

---

The Defendant-Appellant, Geoffrey Alexander, appeals the revocation of his probation. In this appeal, Alexander argues that (1) the trial court erred by revoking his probation and (2) the trial court should have granted his request for a continuance. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Larry D. Drolsum, Franklin, Tennessee, for the Defendant-Appellant, Geoffrey Alexander.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Sean B. Duddy, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Background**. Alexander was charged with three counts of delivery of a controlled substance in a school zone, a Class D felony. He entered a negotiated plea agreement under which he pled guilty to three counts of delivery of not less than one-half (½) ounce of marijuana, a Class E felony. The judgments were entered on February 24, 2006. Alexander received an effective sentence of four years in the Tennessee Department of Correction and was assessed fines totaling $10,000. Under the plea agreement, he was placed on supervised probation after serving six months in confinement. The plea agreement required that Alexander pay fines and court costs on a schedule determined by his probation officer. Alexander was also subject to conditions set forth in the probation orders.

Prior to the instant case, Alexander twice violated his probation. In the first violation, submitted on July 13, 2006, Alexander failed to complete a mandatory drug rehabilitation

program. Based on Alexander's admission to the violation, the trial court revoked his probation. Alexander received time served, and his probation was reinstated.

The second violation, reported on January 28, 2008, alleged that Alexander failed to pay fines and court costs. The affidavit states, "Subject has a court cost balance of $3,437 and his probation is due to expire on 1/30/08." Alexander admitted to the violation, and the trial court imposed a two-year probationary sentence that extended Alexander's probation to February 25, 2010. The trial court specified that the sentence could be dismissed before the latter date if Alexander paid all of his fines and court costs.

The instant violation report, filed on October 20, 2009, alleged the following violations:

> Violation of Probation Rule #1[:] "Subject was arrested on 8-2-09 in Davidson Co. Tennessee and was charged with Theft of Merchandise under $500.00. This case has been bound over to the Davidson County Grand Jury."

> Violation of Probation Rule #4: "Offender has not provided proof of employment since February 2009 and has not followed his Probation Officer's instructions as to job searches."

> Violation of Probation Rule #10: "Offender has not paid court costs and fines as instructed by his Probation Officer."

The alleged violations were addressed at a probation hearing on March 23, 2010.

**Probation Hearing**. The facts supporting the violation of State law condition involved the theft of Zoey Kentel's purse while she and her friend were at a dance club. Kentel, employed with the United States Army, testified that on the night of August 2, 2009, she was dancing on an elevated platform with her friend. She noticed Alexander looking up at her from the dance floor below. She made eye contact with Alexander, and he asked her to turn around. Kentel ignored Alexander and continued dancing. Several minutes later, she felt a tug on her right hand. Kentel thought she dropped her purse; however, when she turned around, she saw Alexander with her purse leaving the dance floor. Kentel took off her high heels and started chasing Alexander. He began to sprint after realizing he was being chased. Kentel testified that Alexander put her purse underneath his shirt. The chase continued down a flight of stairs. Kentel eventually caught Alexander. She stated, "I started hitting him in his shoulders and in the back of his head with my high heels." Kentel said Alexander was still in possession of her purse at that time. The chase continued and Alexander ran toward the bathroom area. Kentel was eventually able to grab Alexander. She stated, "By the time the bouncers had caught up to us I had him in a partial neck choke not fully locked in."

Alexander was no longer in possession of the purse when he was apprehended. Kentel said the purse was found about a minute later by the bathroom attendant. The purse contained three phones, three cameras, and a Global Positioning System.

Officer Tiffany Hoadley testified that she responded to a call from the dance club on the night of August 2, 2009. She conducted a field investigation during which she spoke with all of the parties involved. Officer Hoadley determined there was probable cause to arrest Alexander. She issued Alexander a misdemeanor citation in lieu of an arrest. On cross-examination, Officer Hoadley testified that the purse was returned to Kentel at the scene of the offense. It was not tested for fingerprints, and it was not placed into evidence. Officer Hoadley said she spoke with Alexander at the dance club. She recalled that he denied stealing the purse.

Evelyn Jones-Jackson, Alexander's probation officer, testified that she worked for the Tennessee Board of Probation and Parole. Jones-Jackson testified regarding the other two probation violations. She stated that Alexander did not work at a lawful occupation to the best of his abilities. She further testified that Alexander had not complied with this condition since February of 2009. She stated, "He has worked [at] a couple of temporary agencies maybe like a week or so to get one pay stub and that's it." Jones-Jackson testified that Alexander also failed to make payments toward a $3,000 fine. She said he was required to pay $50 a month, which he did not do. Jones-Jackson confirmed that this was Alexander's third probation violation.

On cross-examination, Jones-Jackson testified further about Alexander's search for employment. She stated:

> [W]hen I first tried to get [Alexander] to look for a job, he would bring in stuff that looked like he just wrote it out of a newspaper. And I told him that wasn't acceptable, he had to bring in something that was accurate. I would call some of the places and they had never heard of Mr. Alexander. He was just writing stuff down to just turn paperwork in.
>
> . . . .
>
> In the last six months prior to this probation violation I called a total of maybe 10 places, and out of the 10 he actually went to one.

Jones-Jackson claimed she advised Alexander on where to look for a job. She stated, "I told him what to do. I gave him directions. I told him exactly who to go talk to because he was trying to get custody of his son and he asked me to help him out. I told him where to go and

he didn't do it." Jones-Jackson added that Alexander "didn't go to the appropriate places that would help a convicted felon get a job[.]"

Twenty-eight year old Alexander testified that he was employed for approximately twenty months while on probation. After he was laid off, he struggled to meet his payment obligations]. Alexander acknowledged that there were eight or nine months when he failed to make payments. He further testified that he tried to find a job daily. He believed his job search was unsuccessful because he was a convicted felon. Alexander said he struggled to pay his probation fees because he was also paying child support.

On cross-examination, Alexander admitted that he was found in violation of his probation on two prior occasions. He said he conceded both of those violations. Alexander testified that he spoke with his probation officer after he was laid off. He stated that the probation officer told him to go to the Tennessee Career Center. Alexander said the Tennessee Career Center provided a list of eight felon-friendly companies. He did not apply with any of these companies because he was told by the Tennessee Career Center that none of them were accepting applications. Alexander testified that he went to at least twenty places and filled out applications. He claimed he brought proof of his job search to his probation officer. Alexander stated, "I brought her all the papers of all the places that I went to."

Following the testimony at the probation hearing, the trial court determined that Alexander violated three conditions of his probation. Based on the evidence concerning Alexander's arrest and theft charge, the trial court found that Alexander failed to obey the laws of the state. The trial court also determined that Alexander failed to provide proof of employment. It reasoned that Alexander did not make sufficient efforts to maintain and find employment. Lastly, the trial court determined that Alexander failed to pay his court costs and fines as instructed by his probation officer. The trial court ordered that Alexander serve the balance of his sentence in confinement. It stated, "[E]fforts other than incarceration have been applied recently to this defendant. Those efforts have been unsuccessful and, therefore, the appropriate thing for this Court to do after three violations of probation is to order that he serve the balance of his sentence[.]"

Alexander appealed the decision of the trial court by filing a timely notice of appeal.

**ANALYSIS**

**I. Probation Revocation**. Alexander argues that the trial court erred by revoking his probation. He claims the testimony at the probation hearing did not establish any of the alleged violations. Alexander asserts that the evidence failed to show that he committed theft. He also contends the evidence proved that he made sufficient efforts to find

employment and to pay his fines. In response, the State argues that the revocation was supported by three separate violations. The State claims Alexander is asking this court to overrule the credibility determinations of the trial court. Upon review, we hold that the trial court did not abuse its discretion by revoking Alexander's probation.

A trial court may revoke probation and order the imposition of the original sentence upon finding by a preponderance of the evidence that the defendant has violated a condition of probation. T.C.A. §§ 40-35-310, -311(e) (2009). Probation revocation rests within the sound discretion of the trial court. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). A trial court's decision to revoke probation will be upheld absent an abuse of discretion. State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005). In order to establish an abuse of discretion, the defendant must show that there is no substantial evidence in the record to support the trial court's determination regarding the probation violation. Id. (citations omitted).

Once the trial court has determined a violation of probation has occurred, it retains discretionary authority to order the defendant to: (1) serve his sentence in incarceration; (2) serve the probationary term, beginning anew; or (3) serve a probationary period that is extended for up to an additional two years. State v. Hunter, 1 S.W.3d 643, 647 (Tenn. 1999). Additionally, under Tennessee Code Annotated section 40-35-310(b), the trial court

> may also resentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration authorized by chapter 36 of this title; provided, that the violation of the defendant's suspension of sentence is a technical one and does not involve the commission of a new offense.

T.C.A. § 40-35-310(b). The determination of the proper consequence of the probation violation embodies a separate exercise of discretion. Hunter, 1 S.W.3d at 647; State v. Reams, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007).

Upon our review of the record, the trial court did not abuse its discretion by revoking Alexander's probation. Proof by a preponderance of the evidence showing that a defendant violated the law is necessary to establish a violation of condition number one. See State v. Catherin Vaughn, No. M2009-01166-CCA-R3-CD, 2010 WL 2432008, at *3 (Tenn. Crim. App., at Nashville, June 14, 2010) (noting that proof of a conviction is not necessary). In addition, the State "must present sufficient facts at the revocation hearing to enable the trial court to 'make a conscientious and intelligent judgment as to whether the conduct in question violated the law.'" State v. Jason L. Holley, No. M2003-01429-CCA-R3-CD, 2005 WL 2874659, at *4 (Tenn. Crim. App., at Nashville, Oct. 25, 2005) (quoting State v. Harkins, 811 S.W.2d 79, 83 n.3 (Tenn. 1991)). Here, sufficient evidence was presented that Alexander

committed a new offense. The record supports the trial court's decision violating Alexander's probation for failure to comply with the laws of the State.

The record further supports the trial court's determination that Alexander violated the conditions of his probation by failing to maintain lawful employment. Here, the trial court credited the testimony of Alexander's probation officer over Alexander's claims that he sought employment but was unsuccessful. Alexander's probation officer provided substantial evidence that Alexander did not actively seek and maintain lawful employment. We are not permitted to override the credibility determinations of the trial court. Alexander is not entitled to relief on this issue

Lastly, we must address whether Alexander violated condition number ten by failing to pay fines and court costs. Citing State v. Dye, 715 S.W.2d 36 (Tenn. 1986), Alexander contends that the trial court was required to consider his reasons for not paying his fines in support of this claim. The State does not address this issue.

In Dye, the Tennessee Supreme Court stated that when a revocation is based on the failure to pay costs and fines, the trial court must determine the underlying reasons for why the payment was not made. Id. at 40. The court quoted the following passage from Bearden v. Georgia, 461 U.S. 660 (1983):

> [I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment.

Id. (quoting Bearden v. Georgia, 461 U.S. at 672). In this case, we acknowledge that the trial court's findings do not explicitly address whether Alexander willfully refused to pay his fines. However, on this record, we conclude that the trial court was permitted to revoke Alexander's probation. In this vein, we will uphold a probation revocation if "an independent and proper basis exists aside from the defendant's failure to pay restitution[.]" State v. Roderick Dean Hughes, No. E2009-00649-CCA-R3-CD, 2009 WL 3787251, at *3 (Tenn. Crim. App., at Knoxville, Nov. 12, 2009) (citing State v. Daryl McKinley Robinson, No. W1999-01386-CCA-R3-CD, 2000 WL 546209, at *2 (Tenn. Crim. App., at Jackson, May 4, 2000). The record shows that Alexander violated two other conditions of his

probation. Therefore, the trial court was authorized to revoke his probation. Alexander is not entitled to relief on this issue.

**II. Continuance**. Alexander argues that the trial court erred by denying his request for a continuance. He claims a continuance would have allowed him to locate a subpoenaed witness who failed to appear. The subpoenaed witness[1] was a bouncer at the dance club where Alexander was arrested. Alexander contends the bouncer's testimony was material because it may have contradicted Kentel's testimony about the theft. In response, the State argues that the trial court did not abuse its discretion by denying the request for a continuance. It asserts that Alexander was given time on the date of the hearing to locate the bouncer. The State also points out that the probation hearing was reset on four prior occasions. Furthermore, the State claims Alexander cannot show prejudice because he violated two other conditions of his probation.

The decision whether to grant a continuance "rests within the sound discretion of the trial court." State v. Morgan, 825 S.W.2d 113, 117 (Tenn. Crim. App. 1991). The Tennessee Supreme Court has held that the reviewing court should "reverse the denial of a continuance only if the trial court abused its discretion and the defendant was prejudiced by the denial." State v. Thomas, 158 S.W.3d 361, 392 (Tenn. 2005). An abuse of discretion is shown when "the failure to grant a continuance denied [the] defendant a fair trial or [when] it could be reasonably concluded that a different result would have followed had the continuance been granted." Id. (quoting State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995)). In other words, this court will reverse a denial of a motion to continue only upon a showing that the petitioner "did not have a fair trial and that a different result would or might reasonably have been reached had there been a different disposition of the application for a continuance." Baxter v. State, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973); see also State v. Caughron, 855 S.W.2d 526, 534 (Tenn. 1993); State v. Butler, 795 S.W.2d 680, 684 (Tenn. Crim. App. 1990).

The bouncer's absence was addressed before Alexander testified. Defense counsel informed the trial court that he personally served the bouncer with a subpoena, which is included in the record as exhibit 1. The subpoena was issued four days before the probation hearing. Defense counsel told the trial court that he had an extended discussion with the bouncer. He claimed the bouncer would directly refute Kentel's testimony. The trial court stated that it planned to finish the hearing on that day and provided the defense until the end of the day to present the bouncer's testimony. The trial court offered to issue a capias if defense counsel could verify the bouncer's location. Defense counsel acknowledged that he

---

[1]The name of the subpoenaed witness was Jason Alexander. The record contains limited information about this witness. Defense counsel gave no indication that Jason Alexander was related to the defendant. For purposes of simplicity, we will refer to Jason Alexander as "the bouncer."

did not know where the bouncer was. This discussion ended shortly before 11:45 a.m. At 5:00 p.m., defense counsel informed the trial court that he was unable to locate the bouncer. Defense counsel requested that the trial court reset the hearing to a later date. The trial court asked defense counsel for some assurance that the bouncer would be present for a future hearing. Defense counsel responded that he planned to look for the bouncer in the coming days. The trial court denied the request for a continuance. It emphasized that the hearing was reset on four prior occasions. The trial court also pointed out that Kentel had been forced to stay at the courtroom all day as a potential rebuttal witness. Additionally, the trial court found that defense counsel failed to provide adequate assurance that the bouncer would be present for a later hearing.

In viewing the record, the trial court did not abuse its discretion by denying the motion for a continuance. In addition, Alexander has not shown that he was prejudiced by the denial of the continuance. As previously discussed, the trial court found that Alexander also violated his probation by failing to actively seek and maintain lawful employment. This violation alone supported the probation revocation. In considering this independent violation, we cannot reasonably conclude that the trial court would have reached a different result. Alexander is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE