IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 15, 2018

**STATE OF TENNESSEE v. BILLY EUGENE COOK, JR.**

**Appeal from the Criminal Court for DeKalb County**
**No. 2017-CR-2     Gary McKenzie, Judge**

_____

**No. M2018-00246-CCA-R3-CD**

_____

The Appellant, Billy Eugene Cook, Jr., appeals the trial court's revocation of his probation for aggravated burglary, contending that the trial court erred by denying a continuance of the revocation hearing and by revoking his probation on his first violation. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

Craig P. Fickling (on appeal) and L. Scott Grissom (at trial and on appeal), Cookeville, Tennessee, for the Appellant, Billy Eugene Cook, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Stephanie Johnson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On October 6, 2017, the Appellant pled guilty to aggravated burglary, a Class C felony. The plea agreement provided that the Appellant would be sentenced as a Range I, standard offender to three years in the Tennessee Department of Correction with the sentence to be served on probation. The judgment of conviction was entered on October 19, 2017.

On November 8, 2017, the Appellant's probation officer, Holly Baugh, filed a violation of probation affidavit, and a warrant was issued alleging that the Appellant had failed to report for his intake appointment on October 24, 2017, and that he had incurred a new charge of theft over $1,000 for an offense on November 5, 2017.

At the December 12, 2017 probation revocation hearing, defense counsel requested a continuance until the resolution of the theft charge. The trial court denied the request, explaining that the court did not know how long it would take to resolve the Appellant's theft charge.

Regarding the basis for the revocation, Ms. Baugh testified that she was the Appellant's probation supervisor and that the Appellant had no prior violations. Ms. Baugh stated that the Appellant was placed on probation on October 6, 2017, and that she gave him her business card on which she had written an instruction for the Appellant to call her. Ms. Baugh acknowledged that another probation officer, Officer Gabbert, was in "transition" and that he may have scheduled an appointment with the Appellant.

Ms. Baugh said that approximately one week later, the Appellant reported to the probation office in Cookeville instead of calling her for an appointment. Ms. Baugh's supervisor called her and told her that he had instructed the Appellant to report to Ms. Baugh's office in the courthouse in Smithville. The Appellant never reported.

On October 19, 2017, Ms. Baugh visited the Appellant at his home and gave him a card noting that he had to report to her on October 24, 2017. The Appellant failed to report that day. Ms. Baugh noted that the Appellant's daughter had called her on the Appellant's behalf. Ms. Baugh made several attempts to contact the Appellant, but he never attempted to contact her. Thereafter, the Appellant was charged with theft in DeKalb County.

On cross-examination, Ms. Baugh said that when the Appellant went to the probation office in Cookeville, he was not reporting for a previously scheduled appointment. Ms. Baugh acknowledged that her business card had the address of the Cookeville office and that the Appellant "may have gone to the office rather than call [her]."

Regarding the Appellant's theft charge, Bridgett Annette Brock testified that around 8:30 a.m. on November 5, 2017, she parked her Jeep outside Sue Puckett's house, got some church bulletins from inside the house, then left the house in the church van. When Ms. Brock left Ms. Puckett's house, the Jeep was unlocked, and the keys were in the vehicle. Ms. Brock was not concerned about leaving the keys in the Jeep because she had followed the same routine for four or five years without trouble.

Ms. Brock said that when she returned to Ms. Puckett's house shortly after 1:00 p.m., her Jeep was missing. She had not given the Appellant or anyone permission to take the vehicle. Ms. Brock watched videos recorded by surveillance cameras around the outside of Ms. Puckett's home. The videos showed the Appellant opening the door of the Jeep then shutting the door and walking toward Ms. Puckett's garage. The Appellant returned to the Jeep, got inside, and drove out of the driveway. Ms. Brock identified the Appellant in court as the person she saw on the video. Ms. Brock estimated that her Jeep was worth $1,500. The vehicle was returned to her.

On cross-examination, Ms. Brock said that she did not know the Appellant prior to November 5. Ms. Brock said that Ms. Puckett's surveillance system was "good" and that it could be viewed on "her big TV screen." The time stamp on the surveillance video reflected that the theft occurred at 11:16 a.m.

Deputy Cole Stewart testified that on November 5, 2017, he responded to Ms. Puckett's residence to investigate the theft of Ms. Brock's vehicle. Deputy Stewart and Officer Lance Dillard viewed the surveillance video, which showed the Appellant "come onto the property, look at the vehicle, find out the keys were in the vehicle, enter[] the vehicle and leave the – leave the premises with the vehicle." Deputy Stewart knew the Appellant and recognized him on the video. After Ms. Brock's vehicle was recovered, the keys to the vehicle were found in the Appellant's pocket.

On cross-examination, Deputy Stewart stated that the Appellant's jail records reflected that he lived on Toad Road, which was "fairly close" to Ms. Puckett's residence. A couple of hours after the theft was reported, the police received a telephone call stating that the Jeep was at "Old Timer's," which was "an old factory on Miller Road." Deputy Stewart asked Cookeville police officers to go to the scene to locate the vehicle. Afterward, the officers "made contact with [the Appellant] at Evans Manor Apartments." Deputy Stewart found the keys to the Jeep while performing a pat-down of the Appellant. Deputy Stewart said that the sheriff's department had retained a copy of the security video. The Appellant did not tell Deputy Stewart that he had permission to take the vehicle.

At the conclusion of the State's proof, defense counsel stated that he had not seen the video and reiterated his motion for a continuance so that he and the trial court could see the video "to be a little more sure" of what happened regarding the alleged theft. The trial court responded that the Appellant's "having the keys in his pocket is pretty good evidence." The State then summarized the proof.

The trial court noted the confusion surrounding the Appellant's reporting dates and declined to revoke his probation on that basis. Nevertheless, the trial court found that the Appellant had violated the terms of his probation by a preponderance of the evidence

based upon the new theft charge. The trial court stated that the State had a "good case" based on "strong evidence," noting that the deputy and the victim recognized the Appellant on the video and that the keys to the Jeep were found in the Appellant's pocket. The court observed that the Appellant committed the violation within three months of being placed on probation, revoked his probation, and ordered him to serve his sentence in confinement. On appeal, the Appellant contends that the trial court erred by failing to grant his motion for a continuance and by revoking his probation on his first violation.

## II. Analysis

### A. Timeliness of Notice of Appeal

Initially, we note that the State contends that the Appellant's notice of appeal is untimely. The Appellant did not respond to this contention. Rule 4(a) of the Tennessee Rules of Appellate Procedure provides that

> the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the "notice of appeal" document is not jurisdictional and the filing of such document may be waived in the interest of justice.

In the instant case, the trial court filed the probation revocation order on December 19, 2017. The Appellant filed his notice of appeal with this court on February 14, 2018, which was beyond the thirty-day time limit. In the interest of justice, we will address the Appellant's concerns.

### B. Continuance

The Appellant summarily argues that the trial court abused its discretion by denying a continuance. He acknowledges that the evidence was sufficient for the trial court to revoke his probation. He nevertheless maintains that the denial prevented him "from being able to go through the discovery process on the theft charge and to determine if any possible defenses or mitigation existed." It is well-established that the decision whether to grant a continuance rests within the sound discretion of the trial court. See State v. Mann, 959 S.W.2d 503, 524 (Tenn. 1997). The trial court's decision may only be reversed if the trial court abused its discretion, and the appellant was improperly prejudiced. See State v. Morgan, 825 S.W.2d 113, 117 (Tenn. Crim. App. 1991). The Appellant is improperly prejudiced by the denial of a motion for continuance when "a

- 4 -

different result might reasonably have been reached if the continuance had been granted." Id.

Rather than finding beyond a reasonable doubt that the Appellant committed the offense, "[t]he trial court is required only to find that the violation of probation occurred by a preponderance of the evidence." State v. Reams, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007) (citing Tenn. Code Ann. § 40-35-311(e)). The Appellant's "right to due process is not violated when the trial court denies a continuance of the revocation proceedings until the disposition of the pending criminal charges." State v. Michael Pierre Adams, No. E2010-00083-CCA-R3-CD, 2010 WL 4324302, at *3 (Tenn. Crim. App. at Knoxville, Nov. 1, 2010) (citing State v. Carden, 653 S.W.2d 753, 755 (Tenn. Crim. App. 1983)). The trial court did not abuse its discretion by denying the Appellant's request for a continuance.

## C. Probation Revocation

The Appellant "acknowledges that the trial court was presented with sufficient evidence to find he was in violation of the terms of his probation." However, he contends that the trial court's revocation "in full was premature in his case as it was his first violation" and that it "allow[ed] probation little opportunity to work with him in a non-custodial setting." The State responds that the revocation of the Appellant's probation was supported by the record. We agree with the State.

Upon finding by a preponderance of the evidence that the Appellant has violated the terms of his probation, a trial court is authorized to order the Appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Furthermore, probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

The Appellant's willingness to commit a crime so soon after being released on probation reveals he is a poor candidate for rehabilitation. This court has held that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002). We conclude that the trial court did not

abuse its discretion in revoking the Appellant's probation and ordering him to serve his original sentence in confinement.

## III.  Conclusion

The judgment of the trial court is affirmed.


_____
NORMA MCGEE OGLE, JUDGE