IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 27, 2012

**STATE OF TENNESSEE v. MALCOLM H. JONES**

**Appeal from the Criminal Court for Knox County**
**No. 95613      Bob R. McGee, Judge**

**No.  E2011-02082-CCA-R3-CD - Filed December 11, 2012**

The Defendant, Malcolm H. Jones, appeals from his dual jury convictions for aggravated robbery, a Class B felony, and the trial court's subsequent sentence, after merging the two convictions, to serve nine years in the Department of Correction (DOC).  He contends that the evidence is insufficient to support his convictions for, that the trial court erred in denying his motion for a continuance, and that the trial court's sentence of nine years was excessive because the trial court misapplied an enhancement factor, and the remaining two enhancement factors are not sufficient to support a one-year enhancement beyond the minimum in the range.  Following our review of the record and the applicable authorities, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Leslie M. Jeffress (on appeal), Knoxville, Tennessee, for the appellant, Malcolm H. Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Randall E. Nichols, District Attorney General; and Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

The record reflects that the Defendant was indicted for two counts of aggravated robbery, under alternate theories, on September 21, 2010.  The Defendant was appointed

counsel, and the case proceeded to trial on June 8, 2011. Before trial began, the Defendant addressed two motions he had recently filed in the case. First, the Defendant moved to strike his "alias," and the trial court granted this motion. The second motion was to continue the case because, according to defense counsel, the Defendant notified him "on the eve of trial" about a "substantial witness" for the defense, and he needed time to locate and subpoena this witness to testify at trial. The motion was not accompanied by an affidavit. Counsel stated that he could not provide the court with the substance of this witness's testimony because he had not spoken with the witness and only had a statement made by the Defendant at that time. The State opposed the motion, and the motion was denied.

Michael Mayes, who is the custodian of records for 911 in Knox County, was the first witness to testify for the State at trial. He testified that the 911 call came into dispatch as an aggravated robbery and introduced the recording of the 911 call and the print-out of the computer log associated with the call. Mr. Mayes testified on cross-examination that there was a "Little Malcolm" mentioned during the call.

The victim, George Bryant Thomas, testified that he was at a friend's apartment, Jasmine Trent, in the Western Heights Housing Complex on May 28, 2012, when the robbery occurred. As he was leaving Ms. Trent's apartment, he looked down, and when he looked back up, there were three black men in front of him, one of whom was holding a gun. They

told Mr. Thomas to give them everything he had. Mr. Thomas testified that he only recognized one of the men but did not know his name; this man was later identified as the Defendant. The Defendant was not holding the gun; however, Mr. Thomas testified that the Defendant started patting him down as soon as the other men told him to give them all he had. Mr. Thomas testified that the Defendant took his wallet out of his pocket, opened it, and took the money out. The Defendant then shoved the money in his own pocket. Mr. Thomas also testified that the Defendant took his cell phone, his shoes, and his shorts.[1] After getting Mr. Thomas's belongings, all three men ran off together. According to Mr. Thomas, as the Defendant fled, he "threw . . . down" Mr. Thomas's wallet and shorts. Mr. Thomas said that he then went inside Diane French's apartment, who was one of Ms. Trent's neighbors, where he learned that Ms. Trent had called the police. He explained that Ms. Trent was the only person who knew that the Defendant's name was Malcolm. Mr. Thomas testified that he did not give any of the men permission to take his property. He stated on cross-examination that the gunman never pointed the gun at the Defendant.

Steve Still, an officer with the Knoxville Police Department (KPD), arrived on the scene of the robbery with other officers where he learned that Mr. Bryant was the victim and Ms. Trent was the witness who called 911. Ms. Trent told Officer Still that one of the

---

[1] Mr. Thomas also testified that "one of 'em got the keys" but could not identify who took his keys. Regarding the taking of his shorts and shoes, Mr. Thomas explained that as the Defendant patted him down, his shorts were falling because they were loose fitting, so the Defendant just grabbed them. Then one of the other men instructed the Defendant to "[g]o ahead and grab his shoes."

suspects was named "Malcolm." Officer Still testified that upon getting that information to officers who worked in the area, they identified the Defendant as the suspect named "Malcolm." Officer Still used the information about the Defendant that he received from the officers to pull up a Department of Safety file with the Defendant's picture and other information. He then filed an arrest warrant with the Defendant's picture attached and informed other officers that there was an outstanding warrant for the Defendant's arrest.

The Defendant testified that he was "watchin' a pickup basketball game at the Baptist Center" when he was approached by "two unknown suspects" from whom he had previously purchased drugs.[2] During their conversation, the two men invited the Defendant to "go chill with some females and smoke[,]" and he accepted the invitation. The Defendant explained that the three of them walked single-file "down towards Oldham but behind the buildings in Western Heights apartments." He followed approximately three paces behind the others. He said that the two suspects, whom he later identified as "Killer Jay" and "Cocaine," walked up to a man, and he thought they were going to converse with him. However, as he caught up with them, he heard the two men say, "Shut the door[,]" and Killer Jay "pulled the gun out." The Defendant then claimed that Killer Jay pointed the gun at him, then back at the victim, and instructed him to "go into [the victim's] pockets." The Defendant said that he "fount [sic] a wallet, a cell phone, and that was all [he] got." He claimed that he gave the

_____

[2] Despite the Defendant's repeated reference to the other two robbery participants as "unidentified suspects," he testified that he knew their "nicknames," and he later provided a general description of both men.

wallet and cell phone to "the gunman" and that he never looked inside the wallet. The Defendant testified that he "was scared" and thought that he "could have been robbed or shot" if he did not comply. The Defendant maintained that he did not know the two men were going to rob the victim nor that "there was a gun in anybody's possession."

The Defendant testified that he went to a friend's house nearby to hide from Killer Jay and Cocaine for a while, but he did not call police because his friend did not have a phone. He further testified that he saw Killer Jay and Cocaine later that day in the area, and the two men overheard one of the Defendant's friends telling him that the police were looking for him. According to the Defendant, upon hearing this, Killer Jay and Cocaine pulled him to the side and said, "Mention our name and we gonna hurt you." The Defendant said that he did not see them again after that.

The Defendant admitted on cross-examination that he remained in the Western Heights area and that he evaded police on two occasions after learning that they were looking for him. He also admitted that he at no point ever tried to contact police regarding the robbery or his fear of Killer Jay and Cocaine.

After deliberations, the jury found the Defendant guilty of both counts of aggravated robbery. At the September 23, 2011 sentencing hearing, the trial court found that three

enhancement factors applied: that the Defendant had a history of criminal convictions other than those necessary to establish the range, that the Defendant participated in a crime in which the risk to human life was high, and that the Defendant had previously been unable to succeed on community release. The trial court also found the following mitigating factors: that the victim was not hurt and that the Defendant was young and lacked judgment. Nevertheless, the trial court found that the enhancement factors outweighed the mitigating factors. The trial court merged the two counts of aggravated robbery, sentenced the Defendant as a Range 1, standard offender, and ordered him to serve nine years in the DOC, concurrently to any other sentence he had been ordered serve.

## ANALYSIS

The Defendant contends that the evidence presented at trial was insufficient to support his convictions for aggravated robbery. Specifically, he complains that the trial court erred in denying his motion for a continuance to interview a potentially substantial witness. The Defendant also contends that the trial court's sentence of nine years was excessive, noting that the trial court misapplied an enhancement factor, and the other two enhancement factors applied were insufficient to justify his sentence. The State responds that the evidence was sufficient to support the aggravated robbery convictions where the jury rejected the

Defendant's contention that he was acting under duress. The State also responds that the trial court did not abuse its discretion in denying the Defendant's motion for a continuance because the Defendant did not follow the rules requiring an affidavit. Finally, the State responds that even if the trial court erred in applying one of three enhancement factors found, the remaining enhancement factors are sufficient to justify the sentence imposed.

*A. Sufficiency of the Evidence*

Specifically, the Defendant contends that the evidence presented at trial was insufficient to support his convictions for aggravated robbery for the following reasons: (1) the Defendant testified that he "believed himself threatened with harm which was present, imminent, impending and of such nature to induce a well-grounded apprehension of death or serious bodily injury if he had not participated in the robbery"; (2) "the trial court agreed insofar as giving the duress instruction"; and (3) given the evidence presented at trial, "the jury should have retained a reasonable doubt regarding duress[.]" The State responds that the evidence is sufficient to show that the Defendant intentionally and willingly robbed the victim because the Defendant does not contest the facts involving his participation in the robbery but insists that he participated under duress. The State also responds that the defense of duress is "rare" and is, generally, unavailable to someone who recklessly places himself

in a situation where compulsion was probable and that the jury was free to reject the defense. We agree with the State.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App.

1999).The standard of proof is the same, whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The duty of this court"on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

A conviction for aggravated robbery, as relevant to this case, requires proof beyond a reasonable doubt that the Defendant committed an "intentional or knowing theft of property from the person of another by violence or putting the person in fear" and that the robbery was "accomplished with a deadly weapon or by display of any article fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. §§ 39-13-401(1), -402(1). However, there are some general defenses to prosecution for aggravated robbery that a defendant may raise at trial; one such defense is duress. See Tenn. Code Ann. § 39-11-203, -504. Pursuant to Tennessee Code Annotated section 39-11-504,

> (a) Duress is a defense to prosecution where the person or a third person is threatened with harm that is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness.

(b) This defense is unavailable to a person who intentionally, knowingly, or recklessly becomes involved in a situation in which it was probable that the person would be subjected to compulsion.

Id. (emphasis added). Additionally, the Sentencing Commission Comments to section 504 advise that "[t]his rare defense is present when a defendant commits an offense because another person threatens death or serious bodily injury if the offense is not committed."

In a light most favorable to the State, the evidence shows that the Defendant and two unidentified men approached the victim, Mr. Thomas, and while one of the men held Mr. Thomas at gunpoint, the Defendant patted him down and took his wallet and cell phone. According to Mr. Thomas, the Defendant placed the money from his wallet into the Defendant's pocket. The Defendant then ran away from the scene with the other two men following behind him. Instead of contacting the police, the Defendant went to a friend's house to hide out. The Defendant remained in the area where the robbery took place, but he never contacted police and, in fact, evaded arrest on multiple occasions when he learned that police were looking for him.

Although the Defendant contends that he presented sufficient evidence at trial that he participated in the aggravated robbery of Mr. Thomas under duress, contrary to the

-10-

Defendant's assertion, Mr. Thomas testified that the other suspects never pointed the gun at the Defendant. Furthermore, according to the Defendant's testimony, it was hours after the robbery took place when Killer Jay and Cocaine verbally threatened to harm him if he mentioned them to police. Despite the Defendant's assertion that the trial court's instructing the jury on duress illustrates that he presented sufficient evidence to prove that his participation in the robbery was done under duress, the law requires the trial court to submit the defense to the jury if admissible evidence fairly raises its applicability because duress is not an affirmative defense,. State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (emphasis added); see also Tenn. Code Ann. § 39-11-203(c) (1997). In his brief, the Defendant admits that the jury was properly instructed on this defense. Accordingly, the jury heard the instructions and all the evidence and was free to reject the Defendant's proffered defense, which it clearly did in this case. Thus, the Defendant is not entitled to relief on this issue.

*B. Trial Court's Denial of Defendant's Motion for Continuance*

The Defendant contends that the trial court improperly denied his motion for a continuance because the Defendant gave counsel the name of a substantial witness "on the eve of trial" who would have assisted the defense, but the late notice of said witness prohibited counsel from filing an affidavit or providing the court with what this witness would have said. The Defendant explains that he had another court date scheduled for

September 7, 2011, and both cases could have been resolved on that date; thus, the Defendant contends that the trial court denied him a fair hearing because the sixty-day delay would not have "inordinately delayed resolution of the matter." The State responds that denial of the motion was proper because the Defendant did not follow the rule requiring an affidavit to accompany the motion and because the witness still had not been located three months after the trial.[3] The State also responds that the Defendant is not entitled to relief because he has failed to show that a different result would have followed had the motion for a continuance been granted because the witness still had not been located three months after trial.

The trial court's denial of a continuance will be reversed only if it appears that the trial court abused its discretion to the prejudice of the defendant. State v. Odom, 137 S.W.3d 572, 589 (Tenn. 2004) (citing State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995)). A trial court abuses its discretion when denial of a continuance deprived the defendant of a fair trial or upon showing that the result of the trial would have been different had a continuance been granted. Odom, 137 S.W.3d at 589. A defendant asserting that the denial of a continuance constitutes a denial of due process or the right to counsel must establish actual prejudice. Id. (citing Morris v. Slappy, 461 U.S. 1, 11-12 (1983). This court has recognized that a continuance might be appropriate in order to afford a defendant a "reasonable opportunity"

---

[3] Tennessee Code Annotated section 19-1-110(a), upon which the affidavit requirement was based, has been repealed. Therefore, a defendant is no longer required to file an affidavit with the court when seeking a continuance.

to locate a witness. State v. Morgan, 825 S.W.2d 113, 117 (Tenn. Crim. App. 1991). However, the defendant bears the burden of showing that a continuance might have reasonably resulted in locating the witness. Id.; see also Brown v. State, 489 S.W.2d 855, 857 (Tenn. Crim. App. 1972).

Here, the Defendant has failed to demonstrate that he was prejudiced by the trial court's denial of his motion for a continuance. The Defendant contends that he was prejudiced because he was denied the opportunity to locate and interview a substantive witness. At trial, defense counsel explained that the Defendant had just informed him about this witness prior to trial and that he could not provide the court with the substance of this witness' testimony because he had not yet interviewed him. Thus, there is no evidence that this witness would have been favorable to the defense. Furthermore, this witness did not show up during trial, and three months after the trial, the witness still had not been located. Based on the foregoing, we conclude that the Defendant has not shown that granting the continuance might have reasonably resulted in locating the witness. We also note that the trial court viewed the Defendant's motion as a delay tactic, referencing his previously denied request for a new attorney, and considered this in its decision to deny the Defendant's motion. Therefore, we cannot conclude that the trial court abused its discretion in denying the Defendant's motion for a continuance.

*C. Sentencing*

The Defendant contends that his sentence is excessive and explains that the trial court improperly enhanced his sentence to nine years, one year beyond the minimum in the eight to twelve-year range, by improperly applying an enhancement factor: that the Defendant participated in a crime in which the risk to human life was high. He further contends that the other two enhancement factors that the trial court applied are insufficient to justify a one-year enhancement from the minimum sentence in the range. The State responds that even if the trial court erred in applying one of three enhancement factors when determining the length of the Defendant's sentence, the other two enhancement factors apply and are sufficient to justify a one-year enhancement from the minimum sentence.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). To facilitate appellate review, "it is critical

that trial courts adhere to the statutory requirement set forth in Tennessee Code Annotated section 40-35-210(e)" and articulate in the record its reasons for imposing the specific sentence. See State v. Susan Renee Bise, -- S.W.3d --, No. E2011-00005-SC-R11-CD, 2012 WL 4380564, at *20 n.41 (Tenn. Sept 26, 2012).

The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing. Id. at *18. Currently, upon a challenge to the sentence imposed, it is the duty of this court to analyze the issues under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at *17. Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2007). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

Our amended Sentencing Act no longer imposes a presumptive sentence. Carter, 254

S.W.3d at 343. Accordingly, Tennessee Code Annotated section 40-35-210 was amended

to provide as follows:

> (c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, <u>the court shall consider, but is not bound by, the following advisory sentencing guidelines</u>:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.
>
> (d) The sentence length within the range should be consistent with the purposes and principles of this chapter.

Tenn. Code Ann. § 40-35-210(c), (d) (emphasis added).


The 2005 amendments rendered advisory the manner in which the trial court selects

a sentence within the appropriate range, allowing the trial court to be guided by - but not

bound by - any applicable enhancement factors when adjusting the length of a sentence.

<u>Bise</u>, 2012 WL 4380564, at *17. In accordance with the broad discretion now afforded our

trial court's sentencing decisions,

> misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as

-16-

amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

Id.

The Defendant's sole sentencing concern is that one enhancement factor, that the Defendant participated in a crime in which the risk to human life was high, was improperly applied because it is an element of aggravated robbery. Although we agree that this enhancement factor was improperly applied, it does not entitle the Defendant to relief. The record illustrates that the trial court considered all the sentencing factors and the relevant facts and circumstances of the case. As stated above, the misapplication of an enhancement factor does not invalidate the sentence imposed by the trial court. The trial court's "within-range" sentence is presumed reasonable unless the Defendant can show an abuse of discretion. Here, the Defendant concedes the applicability of the other two enhancement factors found by the trial court, and their application is supported by the record. Because the trial court complied with the Sentencing Act and the proffered reasons for imposing the sentence are supported by the record, we cannot conclude that the trial court abused its discretion by sentencing the Defendant to serve nine years in the DOC.

CONCLUSION

Accordingly, the judgment of the trial court is affirmed.

-17-

_____
D. KELLY THOMAS, JR., JUDGE