IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 24, 2020, at Knoxville

## DWIGHT MICHAEL ALSTON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Tipton County**
**No. 8245     Joe H. Walker, III, Judge**

———————————————————

**No. W2019-00930-CCA-R3-PC**

———————————————————

The Petitioner, Dwight Michael Alston, appeals the post-conviction court's denial of his petition for post-conviction relief in which he challenged his conviction for first degree premeditated murder.  The Petitioner maintains that trial counsel was ineffective for advising him not to testify and for failing to investigate and raise issues regarding the competence of the Petitioner's son.  Additionally, the Petitioner asserts that the post-conviction court erred in finding that appellate counsel was ineffective for failing to raise issues on appeal that were included in the motion for new trial.  The Petitioner also argues that the post-conviction court erred in not allowing a continuance or bifurcated hearing so that appellate counsel could be present to testify.  After a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT L. HOLLOWAY, JR., JJ., joined.

Frank Deslauriers, Covington, Tennessee, for the appellant, Dwight Michael Alston.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and Eric Haas, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

### Trial

The Petitioner was convicted of the first degree premeditated murder of his wife and received a life sentence. *State v. Dwight Michael Alston*, No. W2017-00184-CCA-R3-CD, 2018 WL 801538, at *4 (Tenn. Crim. App. Feb. 8, 2018). At trial, the Petitioner's adult son, Mr. Michael Alston ("Mr. Alston"), testified that on the evening of September 19, 2014, the Petitioner and the victim were arguing because the victim wanted to go to a party and the Petitioner wanted her to stay home so they could enjoy "some family time." *Id.* at *1. Mr. Alston testified that after the victim left to attend the party, he and the Petitioner watched television before Mr. Alston went to bed. Mr. Alston later was awoken by the sound of the garage door opening. *Id.* He heard the Petitioner and the victim arguing from his bedroom, which he described as being in the back corner of the house, away from the garage.

Mr. Alston testified that he saw the Petitioner holding a shotgun while the victim "fell to her knees and started begging and everything." *Id.* According to Mr. Alston, the victim was pleading with the Petitioner and told him that she would "sign the papers." *Id.* At this point, the Petitioner told Mr. Alston, "[G]et back, [you] don't need to see this." *Id.* Mr. Alston returned to the kitchen and heard a gunshot moments later. *Id.* He grabbed the cordless, landline telephone, ran outside, and hid under a neighbor's car that was parked across the street from his house. *Id.* He crawled out from under the car when he heard the Petitioner. *Id.* The Petitioner was not carrying a gun and told Mr. Alston to call 911. *Id.* Mr. Alston called 911 after watching the Petitioner drive away.

On cross-examination, trial counsel questioned Mr. Alston about his schizophrenia and the medications that he was prescribed. *Id.* Mr. Alton testified that he made the decision to stop taking his medications because the medications caused headaches. *Id.* He acknowledged that, as symptoms of his schizophrenia, he suffered from hallucinations and believed that he spoke to the devil and had conversations with demons. *Id.*

Ms. Dorothy Bounds, the Petitioner's sister, testified that in the early morning hours of September 20, 2014, the Petitioner knocked on her door and her husband, Mr. Mose Bounds, Jr., answered the door. *Id.* at *2. Ms. Bounds stated that the Petitioner was shaking and seemed nervous. *Id.* The Petitioner told Ms. Bounds that he had killed the victim and that he was going to jail. *Id.* Ms. Bounds testified that the Petitioner had lived with her and her husband while he and the victim were separated in 2013. *Id.* During that time, the Petitioner told Ms. Bounds that he intended to divorce the victim. *Id.* In 2014, the Petitioner told Ms. Bounds that he and the victim were reconciling, and the Petitioner resumed living with the victim and Mr. Alston. *Id.* After the Petitioner resumed living with the victim and Mr. Alston, he told Ms. Bounds that he still intended to go through with the divorce and that he had discovered a card at the victim's workplace that was from "a man friend." *Id.*

- 2 -

Mr. Bounds testified that the Petitioner knocked on his door around 1:15 a.m. on September 20, 2014. *Id.* at *3. The Petitioner told Mr. Bounds to take him to the sheriff's office "because he had done something he shouldn't have done." *Id.* Mr. Bounds drove the Petitioner to the Tipton County Jail and saw the Petitioner talk to an officer, and the officer took the Petitioner into custody. *Id.*

Ms. Barbara Thomas testified that she and the Petitioner dated for a few months while he was living with Ms. Bounds. *Id.* at *4. According to Ms. Thomas, the Petitioner told her that his divorce from the victim was "in motion" and that although the divorce was not contested, the victim did not want to sign the divorce papers. *Id.* Ms. Thomas recalled the Petitioner telling her that the victim was "going to sign one way or the other" and that he would get a divorce "one way or the other." The Petitioner and Ms. Thomas talked about marriage. *Id.*

Ms. Oberia Malone, the victim's sister testified that she and the victim worked in the same building and often had lunch together. *Id.* Ms. Malone recalled an instance where the Petitioner attended one of these lunches, but that he was quiet, did not eat, and did not interact with the victim. *Id.* On the Sunday before the victim's death, Ms. Malone attended a dinner at the Petitioner's and victim's house. *Id.* She stated that after dinner the victim went upstairs and began separating items, including clothing. *Id.* Ms. Malone testified that the victim was "torn" about the divorce. *Id.*

Once the Petitioner was in the custody of law enforcement, Special Agent Chuck Baker of the Tennessee Bureau of Investigation interviewed him. *Id.* This interview was video recorded, and the recording was played for the jury. *Id.* The Petitioner informed Special Agent Baker that he was upset that the victim was consistently going out at night and often did not return until 1:00 a.m. to 2:00 a.m. *Id.* The Petitioner told Special Agent Baker that on the night of the shooting, the victim left their house, and he followed her in his car to a store. *Id.* The Petitioner then returned home and watched television with his son. *Id.* According to the Petitioner's interview, the victim returned home around 2:00 a.m. *Id.* The Petitioner took a gun out of a closet located in the garage and confronted the victim about whether she was seeing another man. *Id.* Mr. Alston came to the garage door while the Petitioner and the victim were arguing. *Id.* The Petitioner told Special Agent Baker that the victim was "pushing" him and that he backed away from her. *Id.*

The Petitioner said that when he approached the rear of the car in the garage, he "bumped" the car and that his hand "hit the trigger." *Id.* He claimed that the gun was not pointed at the victim and that he did not know that he had shot her until he looked down and saw blood. *Id.* The Petitioner returned the gun to the closet and placed a bullet in his pocket. *Id.* He intended to shoot himself, but heard Mr. Alston outside and went to talk to

him.  *Id.*  On cross-examination, Special Agent Baker acknowledged that the Petitioner maintained throughout the interview that he did not intend to kill the victim.  *Id.*

Dr. Paul Benson, an expert in forensic pathology, testified that the victim died as a result of a gunshot wound to the back of her head.  *Id.* at *3.  Dr. Benson believed that the muzzle of the shotgun was approximately three feet away from the victim at the time she was shot, as evidenced by the lack of soot or searing around the entrance wound.  *Id.*

The defense did not present any evidence at trial and the Petitioner elected not to testify.  The trial court conducted a hearing pursuant to *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999).  The Petitioner agreed with trial counsel that they had reviewed the discovery evidence together, that he and trial counsel had discussed whether the Petitioner would testify, and that the Petitioner independently decided that he would not testify.  The jury convicted the Petitioner of first degree premeditated murder, and the trial court sentenced the Petitioner to life imprisonment.  The Petitioner appealed his conviction arguing that the evidence was insufficient to support his conviction.  This court affirmed the Petitioner's conviction on appeal.  *Dwight Michael Alston*, 2018 WL 801538 at *6.

## Post-Conviction Proceedings

The Petitioner filed a pro se petition for post-conviction relief raising fourteen grounds.  As pertinent to this appeal, the petition alleged that trial counsel was ineffective for advising the Petitioner not to testify and failing to file a motion that would prevent Mr. Alston from testifying on the ground that he was not competent to testify.  The Petitioner also argued that appellate counsel was ineffective in only challenging the sufficiency of the evidence on appeal and not pursuing any of the other eleven claims that trial counsel raised in the motion for new trial.  The petition notes that trial counsel included the following issues in the motion for new trial:

> 1.  That the evidence preponderates against the guilt and in favor of the innocence of the Defendant;
> 2.  That it was error for this court to deny the Defendant's motion in limine;
> 3.  That it was error for this court not to allow count two to be submitted to the jury along with counts one and three;
> 4.  That a new trial should be granted because the jury was not sworn;
> 5.  That it was error for this court to allow a picture of the deceased and allow the state to solicit testimony under what circumstances the picture was taken;
> 6.  That it was error for this court to allow the questioning of Michael Alston as to why he was scared and, further, why he did;
> 7.  That it was error for this honorable court to allow the state of Tennessee to attempt to rehabilitate its own witness, Michael Alston;

8. That it was error for this court to allow the witness, Walker, to testify about Michael's demeanor;
9. That it was error for this honorable court to allow Sergeant Callen as an expert and further, for the court to allow Sergeant Callen to offer an opinion;
10. That it was error for the court to allow the autopsy report to be entered into evidence;
11. That it was error for this honorable court to allow the witness, Malone to testify about going to Johnnie Alston's house to get furniture and, further, error to allow questioning of the witness as to allow questioning of the witness as to the purpose of getting those items;
12. That it was error for this honorable court to allow questioning of witness, Malone, to describe Johnnie's demeanor and, further, as to what she thought of the marriage.

The post-conviction court appointed counsel to represented the Petitioner, and post-conviction counsel did not file an amended petition. The post-conviction court granted the Petitioner's request for a continuance for the hearing on two occasions. On August 10, 2018, the post-conviction court entered an order granting the Petitioner's request for a continuance stating that counsel for the Petitioner moved based "upon a good showing" for the hearing to be continued and reset. On October 29, 2018, the post-conviction court appointed new counsel after the original post-conviction counsel was removed due to a conflict. Newly appointed counsel moved for a continuance that was granted on January 22, 2019.

At the beginning of the post-conviction hearing on March 18, 2019, post-conviction counsel informed the court that appellate counsel could not be present because "[s]he had a personal matter." Post-conviction counsel requested that the court allow a continuance or a bifurcated proceeding that would allow trial counsel to testify that day and allow appellate counsel to testify in a separate hearing. The post-conviction court denied post-conviction counsel's request and stated that it would "consider the allegations against [appellate counsel] today."

The Petitioner testified that trial counsel failed to present an accidental killing defense. He believed that if trial counsel had focused more on the accidental nature of the killing, he would likely have a received a conviction of second degree murder or manslaughter instead of first degree murder. The Petitioner stated that if he had testified, he could have explained to the jury that the shooting was accidental. He recalled having a conversation with trial counsel during the trial regarding whether he would testify, and trial counsel advised the Petitioner that it would not be in his best interest to testify.

- 5 -

On cross-examination, the Petitioner acknowledged that he hired trial counsel to represent him. The State pointed out that in the petition, the Petitioner alleged that he spoke with trial counsel about whether he would testify approximately a year prior to trial, even though the Petitioner had just testified that trial counsel only spoke with him about whether the Petitioner would testify the day of trial. The Petitioner acknowledged trial counsel reviewed the evidence with him prior to trial.

The Petitioner testified that he believed that trial counsel should have challenged Mr. Alston's competency to testify. The Petitioner thought that Mr. Alston's testimony unfavorably impacted the outcome of the trial. The Petitioner testified that Mr. Alston was a diagnosed schizophrenic who had been hospitalized prior to the shooting. The Petitioner agreed that Mr. Alston suffered from hallucinations. On cross-examination, the Petitioner acknowledged that trial counsel questioned Mr. Alston about his mental health on cross-examination at trial.

After the Petitioner was convicted, trial counsel filed a motion for new trial raising twelve issues. The Petitioner was appointed a separate attorney for the purpose of filing his direct appeal. The Petitioner testified that appellate counsel only challenged the sufficiency of the evidence on appeal and did not raise any of the additional eleven issues that trial counsel raised in the motion for new trial. The Petitioner said that he met with appellate counsel prior to her filing the appellate brief and that she informed him that it was in his best interest to only challenge the sufficiency of the evidence. The Petitioner stated that he simply listened to appellate counsel's advice. On cross-examination, the Petitioner agreed that he had the opportunity to discuss which issues would be raised on appeal with appellate counsel but testified that he wanted appellate counsel to raise all of the claims that trial counsel included in the motion for new trial on appeal.

Trial counsel testified that he had practiced law for over forty-two years at the time of the post-conviction hearing. He recalled attempting to negotiate with the State for a plea to a lesser included offense but was unable to do so. Trial counsel remembered advising the Petitioner not to testify at trial and recalled having several discussions with the Petitioner about whether he should testify. Trial counsel agreed that the Petitioner came across as very mild-mannered and polite, and trial counsel was not concerned with the Petitioner's demeanor when he advised him not to testify. He was concerned with the issues that would be brought out during cross-examination, mainly that the Petitioner and the victim were going through a divorce, that they had argued about the division of personal property, and that the Petitioner believed that the victim had relationships with other men. Trial counsel believed that those issues could be used to establish a motive for first degree murder. Additionally, he explained that he believed that it was not necessary for the Petitioner to testify because the jury heard his recorded statement in which he maintained that the shooting had been an accident. Trial counsel recalled engaging in a mock

examination with the Petitioner with trial counsel performing the role of the prosecutor. Trial counsel stated that he believed there "were areas of concern of questions that [the Petitioner] could not give a good answer to."

Regarding Mr. Alston's competency, trial counsel recalled speaking with Mr. Alston prior to trial. Trial counsel was aware of Mr. Alston's mental health diagnosis and was in possession of some of Mr. Alston's mental health records. Trial counsel was not concerned with Mr. Alston's competency to testify and stated that he did not believe that Mr. Alston "would have a problem understanding the importance of taking an oath to tell the truth." Trial counsel did not believe based on his conversation with Mr. Alston and Mr. Alston's medical records that there were grounds to challenge Mr. Alston's competency.

Trial counsel agreed that each of the twelve issues he raised in the motion for new trial had merit and should have been raised on appeal. He explained that it is his practice to prepare a motion of new trial immediately after trial while "the issues are fresh on my mind."

The post-conviction court issued a written order denying the Petitioner relief. The post-conviction court found that trial counsel advised the Petitioner not to testify after discussing whether it would be advantageous to the Petitioner to testify and that trial counsel reviewed the Petitioner's recorded interview in which the Petitioner stated that the shooting was an accident. The post-conviction court determined that the Petitioner failed to show that trial counsel was deficient when he advised the Petitioner not to testify.

Regarding the competency of Mr. Alston, the post-conviction court determined that trial counsel was not ineffective in failing to challenge Mr. Alston's competency prior to trial because there was no showing made by the Petitioner that Mr. Alston was not competent to testify. The post-conviction court noted that the Advisory Commission Comments to Rule 611 of the Tennessee Rules of Evidence states that "[v]irtually all witnesses may be permitted to testify: children, mentally incompetent persons, convicted felons."

The post-conviction court found that the Petitioner failed to show that appellate counsel was deficient on appeal because he failed to explain how the other eleven issues raised in the motion for new trial would have been meritorious on appeal. Further, the post-conviction court noted that the Petitioner testified that he and appellate counsel met and discussed the issues that would be raised on appeal and that the Petitioner testified that he trusted appellate counsel's advice that he should only challenge the sufficiency of evidence on appeal.

**ANALYSIS**

On appeal, the Petitioner argues that trial counsel was ineffective for advising him not to testify during trial and for failing to adequately investigate and raise issues regarding Mr. Alston's competency. Additionally, the Petitioner contends that the post-conviction court erred in failing to allow a continuance or a bifurcated hearing so that appellate counsel could be present to testify. He asserts that this was error because the post-conviction court made findings regarding the effectiveness of appellate counsel without hearing her testimony. The State responds by arguing that this court should dismiss the Petitioner's appeal because it was untimely. The State maintains that trial counsel was effective in advising the Petitioner not to testify. The State argues that the Petitioner has failed to present any evidence that Mr. Alston was not competent to testify. Lastly, the State asserts that the Petitioner failed to establish that appellate counsel was ineffective for failing to raise additional issues on appeal and that the post-conviction court did not err in not granting a continuance or bifurcated hearing.

With regard to the State's contention that this court should dismiss the Petitioner's appeal because the notice of appeal was untimely, we note that after the Petitioner filed his notice of appeal, he also filed a motion to accept the late-filed notice of appeal. This court entered an order granting the motion. Accordingly, we will address the Petitioner's claims on appeal.

## I. Ineffective Assistance of Trial Counsel

A petitioner is entitled to post-conviction relief from any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The petitioner has the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

To establish an ineffective assistance of counsel claim, the Petitioner "must show that counsel's performance was deficient and that the deficiency prejudiced the defense." *Wiley v. State*, 183 S.W.3d 317, 329 (Tenn. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 692 (1984); *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996)). This court "need not address both elements if the petitioner fails to demonstrate either one of them." *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). To establish deficiency, the petitioner is required to show that trial counsel's actions "fell below an objective standard of reasonableness under prevailing professional norms." *Wiley*, 183 S.W.3d at 329. Trial

counsel's performance is not deficient when the advice given is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to establish prejudice as a result of trial counsel's deficient performance, the petitioner "'must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different.'" *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)).

## A. Right to Testify

The Petitioner maintains that trial counsel was ineffective for advising him not to testify. The State argues that this argument is without merit because the Petitioner acknowledged that he made the decision not to testify after he and trial counsel discussed on multiple occasions the potential benefits and detriments of the Petitioner's testimony.

During the post-conviction hearing, trial counsel stated that he advised the Petitioner not to testify because he was concerned that the State would question the Petitioner about his ongoing divorce with the victim. Trial counsel also stated that the jury had already heard from the Petitioner when the State played the Petitioner's interview during Special Agent Baker's testimony. The post-conviction court found that trial counsel "advised the Petitioner of the benefits and detriments of testifying and explained the decision was for the Petitioner to make." The Petitioner testified in a jury-out hearing that he did not wish to testify before the jury and that it was his decision not to testify. *See Momon*, 18 S.W.3d at 157. Further, the post-conviction court determined that the jury heard the Petitioner's version of the circumstances surrounding the shooting when the video recording of the Petitioner's interview with Special Agent Baker was played for the jury. We conclude that trial counsel was not deficient for advising the Petitioner not to testify. Because the Petitioner has failed to establish that trial counsel was deficient, we need not address the prejudice prong. *See Kendrick*, 454 S.W.3d at 457.

## B. Competency of Mr. Alston

The Petitioner contends that trial counsel was ineffective for failing to adequately investigate and challenge the competency of Mr. Alston to testify at trial. The State maintains that the Petitioner has failed to establish that he was prejudiced by trial counsel's decision not to challenge Mr. Alston's competency to testify. We agree with the State.

Rule 601 of the Tennessee Rules of Evidence states that "[e]very person is presumed competent to be a witness except as otherwise provided in these rules or by statute." The Advisory Comments to Rule 601 states that "[v]irtually all witnesses may be permitted to testify: children, mentally incompetent persons, convicted felons." "[E]very witness shall be required to declare that the witness will testify truthfully by oath or affirmation,

administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so." Tenn. R. Evid. 603. However, trial counsel "may attempt to impeach a witness by demonstrating his or her impaired capacity either at the time of the occurrence which is the subject of the testimony or at the time of the testimony." *State v. Garrick Graham*, No. E2014-01267-CCA-R3-CD, 2016 WL 892103, at *13 (Tenn. Crim. App. Mar. 8, 2016) (citing Tenn. R. Evid. 617; *State v. Barnes*, 703 S.W.2d 611, 617-18 (Tenn. 1985)).

Trial counsel testified at the post-conviction hearing that he did not believe that Mr. Alston "would have a problem understanding the importance of taking an oath to tell the truth." Further, trial counsel was aware of Mr. Alston's schizophrenia diagnosis and questioned him about his mental health on cross-examination. Trial counsel also testified during the post-conviction hearing that he interviewed Mr. Alston prior to trial and had obtained his medical records. During the cross-examination of Mr. Alston, trial counsel questioned Mr. Alston about his prescribed medications, the symptoms of his schizophrenia, and whether Mr. Alston was still taking his prescribed medications. The Petitioner failed to present any evidence that Mr. Alston was not competent to testify at trial. *See Larry E. Rathbone v. State*, No. E2019-00447-CCA-R3-PC, 2020 WL 2079264, at *13 (Tenn. Crim. App. Apr. 30, 2020) (concluding that the petitioner failed to show that trial counsel was ineffective for failing to challenge the victim's competency to testify when he failed to establish that "a factual basis existed for trial counsel to mount a successful challenge to the victim's competency to testify."). Accordingly, we conclude that trial counsel was not ineffective for failing to challenge Mr. Alston's competence.

## II. Denial of a Continuance or Bifurcated Proceeding

The Petitioner maintains that the post-conviction court erred in making findings of fact regarding appellate counsel's effectiveness when it did not allow a continuance or bifurcated proceeding that would have allowed appellate counsel to testify. The Petitioner asserted in his petition for post-conviction relief that appellate counsel was ineffective for failing to raise the twelve issues that trial counsel raised in the motion for new trial. The post-conviction court determined that the Petitioner "failed to show the merit of any of the other issues set out in the motion for new trial. [The] Petitioner has failed to show how counsel was deficient on appeal." The State asserts that the post-conviction court did not err in concluding that the Petitioner failed to establish that appellate counsel was ineffective. The State notes in its brief that the post-conviction court had previously granted the Petitioner two continuances and was acting within its discretion in denying another continuance. We agree with the State.

Whether to allow a continuance is within the discretion of the post-conviction court. *See Terry D. Sneed v. State*, No. E2010-00323-CCA-R3-PC, 2011 WL 862029, at *3

(Tenn. Crim. App. Mar. 14, 2011) (citing *Moorehead v. State*, 409 S.W.2d 357, 358 (Tenn. 1966)). The post-conviction court's decision to deny a request for a continuance will only be overturned when the post-conviction court abused its discretion and the petitioner was prejudiced by the court's decision. *Dallas Jay Stewart v. State*, No. M2014-01682-CCA-R3-PC, 2016 WL 2620286, at *4 (Tenn. Crim. App. May 5, 2016) (citing *State v. Morgan*, 825 S.W.2d 113, 117 (Tenn. Crim. App. 1991)). "A Petitioner is improperly prejudiced by the denial of a motion for continuance when 'a different result might reasonably have been reached if the continuance had been granted.'" *Id.* (quoting *Morgan*, 825 S.W.2d at 117).

We conclude that the post-conviction court did not err by denying the Petitioner's oral motion for a continuance or a bifurcated hearing to allow appellate counsel to be present to testify. The Petitioner's brief simply states that the post-conviction court erred in denying him a continuance because the post-conviction court made factual findings regarding the effectiveness of appellate counsel without listening to her testimony. He failed to establish that he was prejudiced by the denial of a motion for continuance because he has not established that a different result would have occurred if the continuance was granted. *Id.* The Petitioner failed to present any evidence surrounding the circumstances of appellate counsel's absence from the hearing, and he failed to include any information regarding whether appellate counsel was under subpoena to testify at the post-conviction hearing. The record establishes that the post-conviction court had granted two previous continuances. The post-conviction court did not err in denying the Petitioner's request for a continuance.

The Petitioner maintains that appellate counsel was ineffective for failing to raise on appeal eleven issues that were included in the motion for new trial. "Appellate counsel are not constitutionally required to raise every conceivable issue on appeal." *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). When a petitioner bases his claim of ineffective assistance of counsel on counsel's failure to raise an issue on appeal, the petitioner proves deficient performance by showing that "this omission was so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Id.* "[I]f an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it." *Id.* Similarly, a petitioner suffers no prejudice when appellate counsel fails to raise an issue on appeal, "unless the omitted issue has some merit." *Id.*

Here, in both the petition for post-conviction and the Petitioner's appellate brief, he simply lists the issues that he believes appellate counsel should have raised. The Petitioner failed to establish that any of these claims would have been successful on appeal. Accordingly, we conclude that the post-conviction court did not err in its findings.

**CONCLUSION**

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE